## THE RICHMONDVILLE MANUFACTURING COMPANY *against* PRALL and others.

## HARSEN *against* STEBBINS and others.

## STEBBINS and others *against* HARSEN.

*A.* being insolvent and compelled to suspend payments, conveyed his property, by a deed of assignment, to *B.*, in trust, to be converted in cash, and the proceeds, after defraying the expenses of executing the trust, to be distributed among the several persons named in a schedule, annexed to the assignment, as creditors under accommodation responsibilities for *A.* Both the parties to the assignment living in the city of *New-York*, where the assignment was made, it was not lodged for record in the office of any court of probate, in this state. Among the property, thus assigned, were 198 shares of the stock of the *Richmondville Manufacturing Company*, an association incorporated by the legislature of *Connecticut*, and situated in *Fairfield* county, in this state. Held, 1. that such shares were subject to the laws of this state; 2. that the assignment was within the provisions of the act of 1828, relating to fraudulent conveyances; 3. that it was void, by that act, because it was not for the benefit of all the creditors of the assignor, and because it was not lodged for record in the office of the court of probate for the district, in which the property was situated.

Where it was provided, by the charter of incorporation of a manufacturing company, that the shares of its stock should be transferable only on the books of the company, in such form as the directors should prescribe; and the directors were empowered to make by-laws, rules, and regulations for the company; the directors passed a by-law prescribing the form of transfer, which was to be made in a book to be kept by the secretary of the company for that purpose, and to be signed by the person making the transfer; although this by-law was never expressly repealed or abolished, and although many transfers were afterwards made, yet none was ever made in the form prescribed in the by-law, but a different mode of transfer, was adopted in practice, *viz.* by an entry made by the secretary, on the application of the seller, to the credit of the purchaser, in the stock book of the company, whereupon the scrip of the seller was surrendered to the secretary, and a new scrip was issued to the purchaser, signed by the president, and countersigned by the secretary, with the seal of the corporation affixed, certifying that such purchaser was entitled to the number of shares so entered to his credit, after which he was recognized by the directors and the company, as a stockholder, and was permitted to act as such in the meetings of the stockholders; in a suit by one claiming under a transfer so

*Fairfield,*
June, 1833.

Richmondville
Manuf'g. Co.
*v.*
Prall.

made, for the dividends, it was held, that he was entitled to the dividends *as against the company ;* but whether his title would prevail against that of a creditor of the assignor, acquired by a subsequent attachment and levy of execution, was left undecided.

THESE were bills of interpleader. The bill of the *Richmondville Manufacturing Company,* stated, that one hundred and ninety-eight shares of the stock of that company, now stand in the name of *Cornelius Harsen,* of the city and state of *New-York,* who now claims them as his property, by virtue of a transfer from *Jeromus Johnson,* to whom they were transferred, by *Ichabod Prall* and *Abraham A. Prall,* of the city of *New-York,* by virtue of a deed of assignment, executed on the 1st of *September,* 1829 ; that in the course of the same month, after the transfer by said *Pralls* to *Johnson,* one *Barnard Dunn,* of the city of *New-York,* attached, in a suit, in his name, against said *Pralls,* the same shares, as the property of said *Pralls,* obtained judgment, and having taken out execution thereon, caused it to be duly levied on those shares, which were sold, under the execution, to *Russel Stebbins, John Brouwer* and *Jacob Brouwer,* of the city of *New-York,* who now claim them ; and that said company have made a dividend of 118 dollars, 80 cents, which they have not paid to any one, because they know not to whom to pay it ; *Harsen* insisting on his right to the dividend, by virtue of his transfer from *Johnson,* under the assignment from said *Pralls,* and *Stebbins* and said *Brouwers* insisting on their right, under the sale on the execution of *Dunn* against said *Pralls.* The plaintiffs then prayed, that the parties aforesaid might be compelled to interplead with each other ; and that the court would, on such interpleadings, establish the right of one party or the other, to the dividend, and also to the shares.

The superior court directed such interpleadings to be had ; and thereupon the parties respectively preferred their bills, stating their claims to the shares in question, which they endeavoured to establish by their proofs.

The court found, that the allegations in the bill of the *Richmondville Manufacturing Company* were true ; that said *Pralls, Johnson* and *Harsen,* were citizens of the state of *New-York,* residing in the city of *New-York* ; that on the 1st of *September,* 1829, said *Pralls,* having become insolvent, and being compelled to suspend payments, assigned, by a deed of

indenture, executed in the city of *New-York*, to said *Johnson*, certain property specified in a schedule annexed to the assignment, including said shares, in trust for the benefit of certain creditors of said *Pralls*, named in another schedule ; (*a*) that such assignment was made in good faith, for the purposes therein expressed ; but it was not lodged for record in the office of any court of probate or town-clerk in this state ; that the property thereby assigned, was greatly insufficient to discharge the debts due from said *Pralls*, specified in the schedule ; that *Johnson* accepted the assignment and immediately undertook the trust ; that on the 2nd of *September*, 1829, the shares were transferred, by *I. Prall* to *Johnson*, on the books of the company ; that on the 15th of *December*, 1829, *Johnson*, in the exercise of the powers and duties conferred upon

(*a*) The following is an abstract of the assignment : "This indenture, made the 1st day of *September*, 1829, between *Ichabod Prall* and *Abraham A. Prall*, of the city of *New-York*, merchants and co-partners under the firm of *I. Prall & Son*, of the first part, and *Jeromus Johnson*, of said city, of the second part, *witnesseth*, that whereas the parties of the first part, owing to divers losses and misfortunes in their commercial affairs, have become insolvent, and are unable to meet their pecuniary responsibilities, and are, consequently, compelled to suspend their payments ; and whereas the said parties of the first part, are possessed of, and entitled to, the goods, effects, debts and choses in action and other property, enumerated or referred to in the schedule hereto annexed, marked A. ; and the said *Ichabod Prall* is possessed of, and entitled to, in his individual right, the manufacturing stock and utensils and other property also enumerated in said schedule ; the said parties of the first part, in consideration &c. do, and each of them doth, by these presents, sell, assign and transfer unto the said party of the second part, his heirs, &c. forever, all the manufacturing stock, goods, effects, debts, choses in action, and other property and estate whatsoever, both real and personal, enumerated or referred to in said schedule, which schedule is to be taken as part of these presents ; *to have and to hold* the premises unto the said party of the second part, his heirs &c. *in trust* for the following uses and purposes : In the first place, to convert the premises into cash, or other available means, for the purpose of distribution, with power to execute the requisite conveyances, assignments and transfers ; secondly, with the first proceeds, to defray the expenses of the trust ; and thirdly, to apply the residue of the proceeds to and among the several persons named in the annexed schedule marked B., as creditors under accommodation responsibilities for the parties of the first part, or the said *Ichabod Prall*, in a fair and just proportion, according to the amounts set opposite to their respective names, in said last mentioned schedule, which is also to be taken as part of these presents." *Johnson*, the assignee, was one of the creditors named in the latter schedule. The amount of debts or responsibilities therein specified, was $51,437. 71.

HARVARD LAW LIBRARY

*Fairfield,*
*June, 1833.*

Richmondville
Manuf'g. Co.
*v.*
Prall.

him, by the deed of assignment, and in good faith, sold the shares to *Harsen*, who knew that they had been previously attached by *Dunn*, for 2500 dollars, which was the full value thereof; and that on the 9th of *March*, 1830, they were transferred to him, on the books of the company.

The court further found, that by the charter of the *Richmondville Manufacturing Company*, it is provided, that the shares of its stock shall be transferable only on the books of said company, in such form as the directors of said company shall prescribe; and that the president and directors of said company shall have power to make by-laws, rules and regulations for said company; and that on the 2nd of *May*, 1821, the directors passed a by-law, prescribing the form of transfer, in these words: "That the secretary of said company shall keep a book, in which all transfers shall be made in the following form, signed by the person making such transfer, or his attorney duly constituted:

"In consideration of the sum of　　　　　to me paid by
　　　　I do hereby transfer and convey unto said
all my right and interest in and to　　　　shares, which I own and possess in the stock of the *Richmondville Manufacturing Company*. In testimony whereof, I have hereunto subscribed my name, this　day of　　　one thousand eight hundred and　　　."

The court also found, that the assignment made to *Johnson*, was not lodged for record in the office of any court of record or town-clerk in this state; that at the time of assignment, one hundred and ninety-eight shares stood on the books of the company, in the name of *I. Prall*, eighty-three of which he owned, by original subscription, and the remaining one hundred and fifteen, he owned by transfer from other persons; that the transfer from *Prall* to *Johnson* was made, by the secretary of the company, by an entry to the credit of *Johnson*, on the book, in this manner:

| Dr.　　JEROMUS JOHNSON | Contra Cr. |
|---|---|
| *Scrip issued this date.* | *Sept.* 2. 1829.　By 198 shares transferred from *Ichabod Prall* —Stock—page 6. by a power of attorney from said *Prall*, on file, dated 1st day of *September,* 1829—Shares $50.00　$9900.00 |

That the transfer from *Johnson* to *Harsen* was made in the same manner ; the secretary, in making such entries, acting by the direction of *Prall* and *Johnson* respectively ; that each of the persons to whose credit the shares were thus entered, immediately received from the company, a scrip, signed by the president, and countersigned by the secretary, with the seal of the corporation affixed, certifying that such person was entitled to so many shares in the *Richmondville Manufacturing Company*, transferable only on the books of the company, by such person, or his attorney lawfully authorized ; and thereupon the scrip of the prior holder was surrendered to the secretary ; that while these shares stood on the stock book, to the credit of *Johnson* and *Harsen* respectively, they were notified to attend, and did attend a meeting of the stockholders of the company, for the transaction of business, and voted therein as stockholders ; that though there have been many transfers of stock, yet no transfer has ever been made upon the books of the company pursuant to the by-law, or in the form therein prescribed, the only mode of transfer practised, at any time, having been that adopted in the transfers above mentioned ; that such transfers have always been made with the knowledge and acquiescence of the directors and the company, and those to whose credit the shares stood on the book, have always been recognized and considered, by the directors and the company, as stockholders of the company ; but that said by-law has never been repealed, or abolished, by any express vote or declaration of the president and directors ; that the scrip issued to *Johnson* and *Harsen* was in the form prescribed, by a previous by-law of the president and directors ; and in every instance, in which stock has been passed to the credit of a purchaser, on the stock book, scrip has been issued, in this form, to such purchaser, and the scrip of the seller has been surrendered to the secretary.

Upon these facts, the question to which of the claimants the shares belonged, and what decree ought to be passed, was reserved for the consideration and advice of this Court.

*Sherman* and *Hawley*, for *Harsen*, contended, 1. That the assignment was not within the act of 1828 ; which plainly contemplates assignments by citizens of this state, having their property here, generally subject to the laws of this state and

*Fairfield*,
June, 1833.

Richmondville
Manuf'g. Co.
*v.*
Prall.

HARVARD LAW LIBRARY

*Fairfield,*
*June,* 1833.

Richmondville
Manuf'g. Co.
*v.*
Prall.

steadily residing within its jurisdiction. In its *terms*, it is applicable only to persons resident in some probate district in this state.

2. That the transfer of the shares was valid. It was made *on the books of the company*, as the charter required; and in the *form* prescribed by the *practice* of the directors. The original form was never *prescribed*, according to the fair construction of that term; having never been adopted or regarded in practice. But if prescribed, it was repealed and abrogated, by non-user and a practice uniformly variant. 2 *Ves.* 439. 330. *Angell & Ames*, 128, 9. 1 *Saund. Pl. & Ev.* 398. Mayor &c. of *Berwick upon Tweed v. Johnson, Lofft,* 334. 339. Mayor of *Kingston upon Hull* v. *Horner, Cowp.* 102. 110.

*N. Smith* and *Betts,* for *Stebbins* and the *Brouwers,* contended, 1. That the assignment made by the *Pralls* of property in *Connecticut,* must, so far as that property was concerned, be governed by the laws of *Connecticut.*

2. That the assignment in question, was made under such circumstances, that is it embraced by the provisions of the act of 1828.

3. That if the deed of assignment was valid, it did not transfer the shares in the *Richmondville Manufacturing Company,* which could be transferred only according to the form prescribed by the by-law. *The Marlborough Manufacturing Company* v. *Smith,* 2 *Conn. Rep.* 579. *Northrop* v. *The Newtown and Bridgeport Turnpike Company,* 3 *Conn. Rep.* 544. *The Oxford Turnpike Company* v. *Bunnel,* 6 *Conn. Rep.* 552.

DAGGETT, Ch. J. It was strongly urged, by those who assert their rights under the levy of the execution, and in opposition to those who claim under the assignment of the *Pralls,* that no such transfer was ever made, by the assignment, as vested any right in the assignee. It is here said, that by virtue of the charter incorporating the *Richmondville Manufacturing Company,* it is provided, that the shares of its stock shall be transferable only on the books of said company, in such form as the directors of said company shall prescribe; and that power was given to the president and directors, to make a by-law on that subject; that they made a by-law pre-

*Fairfield,*
June, 1833.

Richmondville
Manuf'g. Co.
*v.*
Prall.

scribing the form of transfers, to be made in a book to be kept for that purpose, by the secretary ; that it should be signed by the person making the transfer ; that said by-law is now, and always has been, in force ; and that no such transfer has ever been made. Hence they infer, that the shares were open to the attachment and execution of the creditors of the *Pralls. The Marlborough Manufacturing Company* v. *Smith,* 2 *Conn. Rep.* 579. *Northrop* v. *Newtown and Bridgeport Turnpike Company,* 3 *Conn. Rep.* 544. *The Oxford Turnpike Company* v. *Bunnel,* 6 *Conn. Rep.* 552.

Those who stand on the assignment and transfer by the *Pralls,* urge, that this by-law has been virtually repealed and abolished, for that there is no instance of its ever having been used in practice ; that the only mode adopted, was an entry in the book of the company, crediting the owner of shares with the number to which he was entitled ; that no other evidence is to be found of any transfer, from the first organization of the company under the charter, though there have been many transfers ; that the persons thus credited with shares, have been recognized, by the company, by being notified to attend the company's meeting, and being admitted to vote ; and that scrip, certifying the number of shares holden, have been issued to them. Hence it is inferred, that shares, holden by virtue of such an entry in the books of the company, are well vested in the persons to whom such credit is given ; and, of course, that their transfers are good.

From the facts found, it would seem clear, that *Johnson,* and of course, *Harsen,* who claims under him, and to whom the company issued a scrip in like form, would be entitled to the dividends *as against the company.* They might be estopped to say, that the dividends on shares certified by them to belong to an individual, should not be paid to that individual. But all these questions and considerations may be waived ; for, in my judgment, the levy of the execution on these shares was valid, and, of course, the title under it is good.

The statute of 1828, entitled " an act in addition to an act entitled an act against fraudulent conveyances," renders this assignment and transfer of the *Pralls* to *Johnson,* void. By the first section of this act, it is declared, " that all conveyances and assignments of any lands, tenements, goods, chattels or choses in action, hereafter made, directly or indirectly, by

*Fairfield,*
*June, 1833.*

Richmondville
Manuf'g. Co.
*v.*
Prall.

any person in failing circumstances, with a view to his insolvency, to any person or persons, in trust for his creditors, or any of them, shall, as against the creditors of the person making such conveyance or assignment, be deemed and adjudged fraudulent and utterly void, unless the same be made in writing, for the benefit of all said creditors, in proportion to their respective claims, and be lodged for record in the office of the court of probate for the district where the assignor or assignors, or some of them, reside ; and the judge or clerk of said court shall enter thereon, the time when the same was received for record, and the record shall bear the same date." *Ch.* 3. *s.* 1. *p.* 182. All the parts of this section bear directly on the assignment in question, with a single exception, which will hereafter be noticed. It is an assignment of shares in a manufacturing company ; and therefore, the subject of assignment is within the description " lands, tenements, goods, chattels and choses in action." It is made by a person " in failing circumstances ;" and so expressed upon the face of it. It also appears, that it was made " with a view to their insolvency ;" for they say, they are " compelled to suspend payments." It is made to *Johnson,* in trust for his benefit, and that of other favourite creditors, not " for the benefit of *all* their creditors, in proportion to their respective claims."

It is, however, objected, that the statute in question cannot apply to any person living out of the state, because of this direction, that the assignment shall be " lodged for record in the office of the court of probate for the district where the assignor or assignors, or some of them, reside." Now, in this case, the parties to the assignment all resided, not only out of the probate district, but out of the state. It will hardly be contended, that such property is not within the jurisdiction of our legislature, or that it is not the subject of any fit and proper municipal regulation. It may be attached and sold on an execution. Property in *Connecticut* gives jurisdiction to the courts in *Connecticut,* between people of other states. Thus it is laid down, 1 *Sw. Dig.* 591. 2 *Sw. Syst.* 198. *Osborn* v. *Lloyd,* 1 *Root* 447. *Sill* v. *The Bank of the United States,* 5 *Conn. Rep.* 102.

Again ; what is the object of the law under consideration ? An equal distribution among the creditors of the effects of an insolvent and a prevention of the evil of partial assignments,

to individual creditors, for their exclusive benefit.  It is, then, the duty of the courts so to construe the law, if possible, to advance the remedy and suppress the mischief.  The same principle lies at the foundation of all laws on the subject of bankruptcy and insolvency.

What then, if the parties to this assignment were citizens of the state of *New-York,* so that a literal compliance with that part of the section in question, which directs that the assignment shall be lodged in the office of the court of probate in the district where the *assignors live,* cannot be had ?  Is the law, on that account, to be deemed a dead letter, in a case otherwise clearly embraced by it ?  I think not.

If some of the rules of construing statutes are resorted to, they will shew, that this assignment is to be considered as within this statute.

Every statute ought to be construed according to the intent of the legislature ; and therefore, if a corporation were intended, though it be misnamed, it is sufficient.   10 *Co.* 57. *b.*— Every statute ought to be construed according to the *intent,* and not according to the *letter.*   *Plowd.* 353. 363.   So the judges expound a case within the *mischief* and *cause* of an act to be within the *equity* of the statute, though it be not within the words.   *Co. Litt.* 24.   So a case out of the mischief intended to be remedied, though embraced by the words, shall be construed out of the purview.   2 *Co. Inst.* 386.— The statute of *Gloucester,* penal in its nature, which gave treble damages against a tenant *for years,* extends, by equity, to a tenant for *half a year.   Plowd.* 178.   Where remedy for waste is given against a *lessee,* it extends to a *devisee for life* or *years.   Plowd.* 10.   A statute in relation to *administrators,* is extended to *executors.   Plowd.* 467.

I have shewn this assignment to be within the equity of the statute.   It ought, then, to be construed to embrace it.   Or shall it be adopted as a sound construction of this act, that the property, however great, situated within our jurisdiction, but owned by a person not an inhabitant, may be conveyed or assigned, by the owner in failing circumstances, to a favourite creditor, to the exclusion of all others ; and those too, perhaps, our own citizens !

If it be asked, how and where the assignment is to be re-

*Fairfield,*
*June, 1833.*

Richmondville
Manuf'g. Co.
*v.*
Prall.

corded, I answer, in the office of the probate judge of the district where the property is situated.

If it still be urged, that this assignment was good, according to the laws of the state of *New-York,* where it was made, it may be replied, it is not good in relation to property in *Connecticut,* being made in contravention of a law rightfully made, and which binds here.

The result is, that the assignment in question is void, under our statute, and that the purchasers under the execution are entitled to the shares; and that the superior court be advised to decree accordingly.

The other Judges were of the same opinion, except PETERS, J., who was not present.

Decree for purchasers under the execution.