Hodges, Ex'r, v. Thacher et al.

EDMUND HODGES, Executor of SETH HODGES, Appellant, v. ALONZO THACHER, THOMAS H. THACHER AND LUCY THACHER, his wife, AND JOSIAH BABCOCK AND HANNAH BABCOCK, his wife.

*Power of probate court to reject report of commissioners. Interlocutory decree. Right of majority of commissioners to act. Construction of statute.*

The decision of commissioners, appointed by the probate court to adjust the claims against an estate, does not become a judgment, in contemplation of law, until their report has been returned to and accepted by the probate court, and recorded, as such. And the probate court, in determining whether they will accept or reject such report, have a judicial discretion, which they may exercise in inquiring into the genuineness, identity and regularity of the report; and in this respect they are not confined to matters apparent upon the face of the report.

And if the probate court, for proper cause, refuse to receive what purports to be a report of commissioners, it is not such a final decree, as that an appeal may be taken therefrom to the county court.

The statute,—Rev. St. 52, § 2,—which provides, that all words, purporting to give a joint authority to three or more public officers, or other persons, shall be construed as giving such authority to a majority of such officers, or other persons, does not change the rule of the common law upon this subject. If, in a matter of public trust, or of power conferred for public purposes, all meet, the act of the majority will bind.

When three commissioners are appointed upon an estate, the probate court should reject a report signed by two, when it appears, that the third did not attend and had no reasonable notice of the meeting of the commissioners, at which decisions, named in the report, were made.

APPEAL from a decree of the probate court, rejecting a report of commissioners to adjust claims against the estate of Seth Hodges. Trial by the court, February Adjourned Term, 1851,—COLLAMER, J., presiding.

At a probate court held November 13, 1848, Gardner Winslow, John Chedel and Ora Paul were appointed commissioners to receive, examine and adjust all claims against the estate of Seth Hodges. On the twenty second day of August, 1849, a report of the doings of the commissioners, and of the claims allowed and disallowed, was

returned to the probate court, and was in all respects in due form, except that it was signed by only Winslow and Chedel, and it did not appear, upon its face, why it was not signed by Paul; and on the 27th day of August, 1849, Alonzo Thacher, a claimant named in said report, and Thomas H. Thacher and his wife, and Josiah Babcock and his wife, residuary legatees under the will of Seth Hodges, filed in the probate court their objections to said report,— setting forth, that the commission was joint, to the three commissioners, and all accepted the trust and were qualified for its execution, but it did not appear from the report, that Paul was present, or acted, in the execution of the commission, and no reason was assigned in the report, why he did not, nor why his signature was not affixed to the report; that a claim, reported as allowed to Edmund Hodges, was an illegal and unjust claim, as against the estate, and its allowance was objected to, by those who filed these objections, before the commissioners, and a request made, before a decision was made, in reference to said claim, that they might be heard thereupon by their witnesses and counsel, as well as for the presence of said Paul at the hearing and decision,—which requests were denied to them, and Winslow and Chedel, without such hearing, and in the absence of Paul, and without giving time to notify or procure the attendance of either said Paul, the witnesses, or of counsel, proceeded alone to pass upon and did pass upon and allow said claim, as reported; that the claim of Alonzo Thacher, embraced in the report, after a hearing had been had thereupon before all of the commissioners, and an adjournment had for a decision, was also decided by Winslow and Chedel alone, without said Paul being present, or having any opportunity offered him of being present, to participate in said deliberation and decision, although at all times ready, upon due notice, and expecting to participate therein. To this the executor filed a written replication, insisting that the report was legal upon its face, and therefore the probate court had no discretion, except to place it upon file. The probate court, having taken time for advisement, decided and ordered, on the 27th day of October, 1849, that the said instrument was illegal and irregular, as a report of the commissioners of claims against said estate, and that it be not accepted, and be not recorded as a report of the commissioners. From this decree the executor appealed. There were five

claims allowed upon said report,—in reference to three of which there was no controversy. After the appeal was entered in the county court, the executor, by leave of court, withdrew the replication filed by him in the probate court, and filed a replication, traversing the several matters of fact alleged in the objections filed by the appellees, and insisting, that the report was in all respects legal. The county court found the facts as follows.

The three commissioners appointed by the probate court accepted the trust, and were sworn according to law, and gave the proper notices of their times of meeting, as directed in the warrant issued to them. These meetings were three, and all of the commissioners attended. At the first of these meetings three claims were presented and allowed, of which the commissioners took memoranda, and in reference to which no question was ever made. At the next meeting the claim of Edmund Hodges, which was upon book account, was presented. The claimant's book was examined by two of the commissioners, and the interest was computed by one of them, and the amount of the claim was ascertained and entered on the commissioners' memorandum ; but Hodges was not sworn to his account, and no testimony was adduced in relation thereto, and no objection to it was interposed at that time. The claim of Alonzo Thacher was then presented, and being objected to by the executor, its examination was deferred until the next meeting. At the next meeting the commissioners were all present, and a full examination and hearing were had in reference to that claim. At the close of that examination, the appellees requested, that a full examination and hearing might be had in reference to the claim of Edmund Hodges. It being then late in the evening, the commissioners decided to adjourn to another day for the purpose of concluding a decision on the claim of Alonzo Thacher, and to take a full examination and hearing in relation to the claim of Hodges ; and they announced to the parties the adjournment, and its purposes. At the time and place, to which this adjournment was had, Winslow and Chedel, two of the commissioners, attended ; but as the parties could not attend, they adjourned to another day certain,—upon which day they met and again adjourned, for the same cause. Of both these meetings Paul, the other commissioner, had notice ; but as he also received notice, that the business would not proceed, on account of the absence of the parties,

he did not attend. On the day, to which this last adjournment was had, Winslow and Chedel again met, and the parties were present. Paul had no notice of the meeting until that day, and only a few hours before it took place. He resided five or six miles from the place of meeting, and his engagements and business were then such, as would occasion him great pecuniary sacrifice to attend; and supposing the commissioners would not proceed without him, but would again adjourn, he did not attend. Winslow and Chedel declined to adjourn, though requested by the appellees, and decided to proceed and complete the business of said commission, without said Paul. Hodges declined to have any farther examination made of his claim, insisting, that, as the time granted to the commissioners to receive claims had expired, they could do no more in relation to it. He withdrew from appearing farther before the commissioners. Winslow and Chedel thereupon concluded on a decision of the claim of Alonzo Thacher, and, without any farther testimony, or hearing, they, from their memorandum above mentioned, entered upon their report the claim of Hodges as allowed, and returned the same, with the other claims, and including the decision of the claim of Thacher, to the probate court.

The appellant insisted, that the probate court had no legal power to make the decree, made in this case, and could not legally set aside and decline to record the return of commissioners, but for cause apparent on the report; and that the fact, that this report did not show the attendance of Paul, one of the commissioners, constituted no objection; and that sufficient cause for his absence was shown. The appellees insisted, that this appeal should not be sustained, as the order, or decree, appealed from, was but interlocutory, and not final;—that the attendance of Paul was necessary to the validity of the proceedings of the commissioners, or reasonable notice to him to attend must be shown,—which was not done ;—and that, having been unjustly deprived of the action of the full board of commissioners in the decision of the claim of Thacher, and of all examination and hearing of the claim of Hodges, this was good cause for the decree of the probate court, and it should be sustained.

The court decided, that the appeal should be sustained ;—that the absence of Paul from the last meeting,—although the court regarded the notice to him not a reasonable one,—would not invalidate

the proceedings of the other two commissioners, and constituted no legal cause for the decree of the probate court;—and that, the objections to the proceedings of the commissioners and their report being such as do not go to the whole report, but are confined to and affect only the particular claims, both of which were open and subject to appeal, the said objections constituted no legal ground for the probate court to make their decree; and the court rendered judgment, that the decree of the probate court be reversed, without cost to either party.    Exceptions by appellees.

*E. Hutchinson* and *Tracy, Converse & Barrett* for appellees.

1. The report of the two commissioners was incomplete of itself. But if *prima facie* sufficient, it is rendered bad, by showing that Paul had no reasonable notice and could not be present.    *Jackson* v. *Hampden*, 16 Maine 184.    *S. C.*, 20 Maine 37.    Persons acting in a public capacity may act by a majority; but the minority must take part in the matter, or have notice, so that they can.    11 Vt. 214.    2 Vt. 492.    6 Mass. 496.    Ib. 50.    8 Mass. 284.    14 Ib. 143. 2 Pick. 331, 345.    1 B. & P. 228.    2 Wend. 494.    7 Cow. 526. 2 Kent 633.    *Downing* v. *Rugar*, 21 Wend. 178.    The statute,— Rev. St. 52, c. 4, § 2,—makes no alteration of the law, as above laid down, which is the common law.    This section is an exact transcript of the statute of Massachusetts; Rev. St., c. 2, § 6.    Yet it has been there decided, that this is merely declaratory of the common law.    *George* v. *Sch. Dist. in Mendon*, 6 Met. 511.    That the statute contemplated, that all the commissioners should act is made certain by reference to chap. 49, sec. 4,—providing that if any one should refuse or be unable to serve, another is to be appointed.

2. The court below decided, that the probate court had no power to reject the report, unless for cause going to the entire list of claims. If the report of two, under the circumstances, was not authorized, it went to the whole.    But we insist, they had that power, and, if so, they were right in exercising it.    *Peck* v. *Sturgis*, 11 Conn. 420. *Edmand* v. *Canfield*, 8 Conn. 87.    2 D. Ch. 61.    6 Vt. 115.    Brayt. 42.    To deny the probate court the power is to deny all remedy for the grossest fraud, for bribery, or corruption.    If the cases are not appealable, there could be no remedy.    And if the probate court would have power to reject the report, if not appealable, by what law

can it be said they had no such power, if appealable. The probate court have control over commissioners and their proceedings. Rev. St. 278, §§ 5–7, 10. The report of commissioners is a judgment, and merges all claims. *Woods, Adm'r,* v. *Pettes et al.,* 4 Vt. 556. Commissioners must report to the probate court, and must notify, as directed by the probate court. Rev. St. 278, § 10; 273, § 3. The probate court have the same power over commissioners, that county courts have over referees, or auditors.

The appeal was premature; the proceedings were not complete in the probate court.

*Washburn & Marsh* for appellant.

1. The probate court have not jurisdiction to reject a report of commissioners, which appears legal upon its face. The commissioners constitute a tribunal independent of the probate court, with distinct and well defined jurisdiction, powers and duties, created, not by the probate court, but by the statute. The only power given by statute to the probate court is to nominate the men and to direct as to the notice to be given to the creditors. Rev. St. 277, §§ 1, 2, 8–11, 13. The provisions made for an appeal demonstrate the intent of the legislature, that the commissioners should constitute a tribunal as distinct from the probate court, as the court of a justice of the peace is from the county court. But if the position taken by the defendants is sustained, the appeal should be taken from the decree of the probate court accepting such report, and thereby establishing the decision of the commissioners. But no such decree of acceptance is provided for or contemplated by the statute. Rev. St. 279, §§ 18, 20, 25. And no greater or other effect is given by the statute to the certificate of the county court, upon the appeal, than to the report of the commissioners. Rev. St. 279, § 22. The provisions in reference to an appeal from the probate court are entirely distinct from these provisions. Rev. St. 251. The same distinction is shown in the provisions for allowing an appeal upon petition. Rev. St. 211, § 6. In no case, except that of contingent claims, is power given to the probate court to decide upon the legality of the claim, or to entertain any proceeding directly bearing upon its merits. Rev. St. 282, §§ 34, 35. The provision, that the report "shall particularly state the manner, in which notice was given,"

shows the intent, that the validity of the report should be determined by inspection. Rev. St. 278, § 10. In case of commissioners, the appeal must be taken directly from the "report;" but in case of a reference, it must be taken from the decree accepting the report. Rev. St. 252, § 37. And see the provision in reference to commissioners to distribute an estate. Rev. St. 296, § 13. The decision of the commissioners, as stated upon their report, is of itself, independent of any proceeding by the probate court, a judgment, as conclusive as the judgment of any other court known to the law. *Ex'r of Doolittle* v. *Hunsden*, Brayt. 42. *Lowry* v. *Stevens*, 6 Vt. 115. The case of *Atherton* v. *Flagg*, 2 D. Ch. 61, arose under the statute of 1797, which varies from the Rev. St. in important particulars.

2. The report is valid, and legal upon its face, although signed by but two of the commissioners. Commissioners derive their authority from the statute. The appointment of two or more is provided for, and the words conferring authority upon them are all joint; Rev. St. 277, §§ 1, 2, 7–11; and their authority extends to all claims against the estate. And by Rev. St. 52, § 2, it is provided, that all words, purporting to give a joint authority to three or more public officers, or *other persons*, shall be construed as giving such authority to a majority of such officers, or other persons, &c. This is not like the case of referees, appointed by the court; for— 1. The referees derive their authority from the agreement of the parties; Rev. St. 162, § 21; 252, § 37;—2. The statute does not purport, even, to confer any authority upon the referees, but provides, that their report shall be allowed and accepted, unless *sufficient cause be shown to the contrary*. Nor like the case of auditors; for they are not public officers, but act in the particular case submitted to them, and the acceptance of their report is made subject to the same condition. Rev. St. 220, § 7. Nor like the case of commissioners to appraise damages sustained by the laying out of a highway. Rev. St. 127, § 19. But it is analogous to the case of selectmen of a town, overseers of the poor, listers, fence viewers, prudential committee of a school district, committee to open the books of a bank, and judges of a court.

3. The reason, why the third commissioner did not sign the report, or the fact, that he was or was not present at the hearing, need not appear upon the face of the report. The report is not an award,

but a judgment; and no more need be shown by it, than appears upon the record of the county court, or of jail commissioners.

4. But it is claimed, that the defendants have been aggrieved by the unjust denial to them, by the commissioners, of their day in court. This is, at the most, equivalent to a denial, by a justice of the peace, of a day in court, or of a hearing upon the assessment of damages. But this could only be remedied by a special statute, which extends only to justices of the peace. *Dodge* v. *Hubbell*, 1 Vt. 491. *Spear* v. *Flint*, 17 Vt. 497.

5. The decree is illegal, for the reason that it vacates the entire report.

6. The appeal was not premature. The decree vacated the entire report. It annulled all, that had thus far been done towards the settlement of the estate, and rendered necessary the appointment of new commissioners.

The opinion of the court was delivered by

REDFIELD, J. The principal question in this case is, whether the probate court have any and if any what discretion, in regard to accepting, or rejecting, the report of commissioners on estates represented insolvent. We think it could scarcely be said, that that court has no discretion in the matter. It is indeed admitted in argument, by the counsel for the appellant, that the probate court might reject the report of commissioners, for defects apparent on the face of the report. And this concession, which it would seem the counsel felt compelled to make, seems to us equivalent to giving that court a general, but not perhaps an unlimited, discretion in the matter. If we allow any discretion whatever to the probate court, and it seems to us we must, it seems impossible to limit it to matters apparent, upon the report.

It might be shown, that only one of the commissioners sat in the hearing of the claims and offsets brought before them, and that this commissioner had used the name of the other commissioners, in making the report, without their consent. And the other two commissioners might have held separate sessions, and made a counter report. It might be shown, that the proper notices had not been given, and it can scarcely be supposed, that the legislature intended to have the return of the commissioners, in regard to notice, any

thing more than *prima facie* evidence. Many other cases might be supposed, where it is evident some discretion must be supposed to reside in the probate court.

Many other very conclusive reasons might, as it seems to us, be drawn, from the analogous appointments in other courts, in favor of some discretion in the court of probate, in regard to accepting their report. We do not perceive any essential difference between the case before us and that of the commissioners, or appraisers of damages, or committees of distribution, appointed by the several courts, to whom such power is given, where the report of the commission is not by law subject to a general revision, but, when accepted, is conclusive of the matter. The report of commissioners to appraise damages, on appeals from the decision of commissioners of a rail road company, in reference to land damages, is very analogous.

We consider, that the probate court have nothing to do with the decision of the commissioners, in regard to a particular claim. That rests exclusively with the commissioners, and their decision is conclusive, unless appealed from. But that decision does not become a record, *res adjudicata,* so to speak, until made a record of the probate court. The commissioners are not a court of record, more than other commissioners, or other boards of triers. And the fact, that in some of these cases of boards of triers, appointed by different courts, the decision of the board is final, and in others it is more or less subject to revision in the court, to which it is to be returned, and by which it is to be accepted and recorded, makes no difference in regard to the necessity of having the report in all cases accepted and recorded by the court to which it is returned. And in all these cases the court, to whom the report is to be made, must of necessity determine, whether *the report presented is the judgment of the commissioners.* And to this extent, undoubtedly, the probate court have a judicial discretion, and for the manner of exercising it they cannot be called in question, so long as they keep within the limits of the law. In Connecticut this point has been expressly decided. *Stoddard* v. *Moulthrop,* 9 Conn. 502. *Peck* v. *Sturgis,* 11 Conn. 420. *S. C.,* 12 Ib. 139.

We entertain no doubt, that the general understanding of the profession upon this subject has been in accordance with the views above expressed, and that it has been sanctioned by this court.

AIKENS, J., 2 D. Ch. 67. This recognition of the necessity of the report of commissioners being " approved by the court of probate," made by Judge AIKENS, was while the statute of 1821 was in force, and that statute contains no explicit provision to that effect, more than the present Revised Statutes. So, too, the statute of 1797 does not in express terms provide, that the report of commissioners shall be accepted by the probate court. Sec. 82. But the provisions are much the same, as in our present statute ;—" Report shall be made to the probate court stating the claims allowed and disallowed." But in section 87 the matter is so incidentally referrred to, as to show, by way of implication, very clearly, that it was expected the probate court would accept, or reject, the report. 1 Tol. St., p. 157. And we entertain no doubt, that such has been the generally received construction of all subsequent statutes upon this subject.

The consideration, that the present statute every where speaks of the decision of the commissioners as the judgment to be appealed from, &c., is perfectly consistent with the view we now take of the subject. It is the decision of the commissioners, which is regarded as the adjudication. But it does not become such, in contemplation of law, until returned and accepted by the probate court, as the decision of the commissioners, and recorded as such. And while this necessary office is devolved upon that court, in regard to the doings of their own officers, it would be wonderful, if they had no discretion to inquire as to the genuineness, identity, or regularity, of such proceeding. It would, we apprehend, if so held, be regarded as a solitary instance of such a mere automaton duty, to be performed by a court of record, of very extensive jurisdiction, and highly important functions.

If the probate court have such a discretion, to determine what shall be regarded as a satisfactory report of the commissioners, and when they have performed their functions, and to recommit the report, if necessary to its completion, it will, we think, admit of doubt, how far such a decree, as was made in the present case, could be regarded as a final decree in the premises. It seems to be as really interlocutory, as the decision of the county court, rejecting a report of auditors. And if the probate court refuse to accept a report of commissioners, which is regular and legal, they may doubtless be

compelled to do so, by some appropriate proceeding. But it does not seem to us, that the matter is so far finally disposed of in that court, that the case can properly come into the county court upon appeal. If that court had no discretion in the matter, an appeal was proper, and their rejecting the report was merely void.

But we entertain no doubt, that the decision of the probate court was correct, unless the chapter of definitions in the Revised Statutes, in regard to the joint authority of public officers, is to be regarded as having overruled the common law upon this subject. And it would seem, that this is not regarded as the natural consequence of that definition in the state of Massachusetts, where it originated. *George* v. *School Dist. in Mendon*, 6 Met. 511. The definition seems to be nothing more, than a codification of the long established rule upon this subject; which will be found very well expressed in 2 Kent 633, n. a. "If the authority, in a matter of mere "private concern, be confided to more than one agent, it is requisite "that all should join in the execution of the power, and they are "jointly responsible for each other; though the cases admit the rule "to be different in a matter of public trust, or of power conferred "for public purposes; and if all meet in the latter case, the act of "the majority will bind." *Grindley* v. *Barker*, 1 B. & P. 229. *Towne* v. *Jaquith*, 6 Mass. 46. *Short* v. *Pratt*, Ib. 496. *Whitman* v. *Tyler*, 8 Ib. 284. *Barrett* v. *Porter*, 14 Ib. 143, and cases cited by the learned commentator. The same principle has been often recognized by this court. *Newell* v. *Ex'r of Keith*, 11 Vt. 214.

The result of all which is, that, in the opinion of this court, the decree of the probate court was not only within their authority, but was the only one they could legally have made. The board, as such, had not completed their business, and the matter should have been recommitted to them for farther proceedings. And had that been done, very likely the result might have been satisfactory to all. If not, either could have properly taken an appeal from the decision of the commissioners, whenever that should be formally made; and until that time, it seems to us, an appeal was premature.

We must, therefore, reverse the judgment of the county court and dismiss the appeal.