Sewall, J.
This is an action by the endorsee of a promissory note against the promisor. The defence is, that the note was improperly obtained, and exists without any valuable consideration ; and that the plaintiff had notice of the objections to it. And from the finding of the jury, under the directions given at the trial, it is understood that this note, payable to Moses Lewis or order, with another noté for the same amount by him payable to the defendant, were deposited, as mutual pledges, to secure the performance of an award by three arbitrators, to whom the parties to the notes had agreed to submit certain disputes between them; that the arbitrators were not, by the agreement of the parties, authorized to decide by a majority; and that the promisee obtained the note in question *40 in consequence of an award, consented to by two of the arbitrators, against the opinion and without the consent of the other; — all which facts and objections were known to the plaintiff, when .he received the endorsement of the note, or undertook the collection of it for the use of the original promisee.
Arbitrators derive their authority altogether from the agreement of the parties, according to the terms of their submission; and although the words of the submission, as well as of any award that may be made pursuant to it, are to be liberally construed, yet the authority of the arbitrators to decide must not be extended beyond the agreement of the parties.
Some decisions, in cases of umpirage, are reported, where the award has been disputed upon the ground that the [ * 49 ] * terms of the submission, in designating the persons authorized to decide, had not been pursued.
It has been decided, that a submission to A and B, and to C, being an umpire, gives to C that exclusive authority; (1) and that it is competent to the persons named as arbitrators, with a time limited for their agreement, and a power to appoint an umpire if they disagreed, to appoint an umpire, as well before as after the limited time expires, and to proceed in nominating an umpire until one accepts, when the first or any succeeding nomination is ineffectual; (2) and that the consent of the arbitrators with the umpire, after one is appointed, will not vitiate the award. (3)
The questions decided, and the decisions themselves, show that the agreement of the parties in the submission is to be closely observed, respecting the person or persons authorized to decide ; and the cases are sufficiently analogous to be cited, where no direct authority has been found upon the point to be decided.
With the precedents cited at the bar, as well as upon obvious principles of reason and justice, and of public expediency, the Court would go far in construing and giving effect to an agreement of this sort. But they would go too far, were they to infer an authority not intimated by any expression of the parties in their submission to the three arbitrators, or arising constructively by any necessary implication from the terms of the submission.
The jury have determined the fact to be, in the case at bar, that the parties, in their agreement to submit their disputes to three arbitrators, used no expression which authorized two to decide; and that an authority to this effect is not to be inferred from the manner, or from any circumstances of the submission.
To proceed, therefore, in enforcing an award by two, under these *41 circumstances, would be wholly without the agreement of the parties. When a submission is to three, a power to two to decide renders an adjustment of the disputes * submitted [ * 50 ] much more certain; and even the public is interested in the conclusion of controversies. But there is no adjustment where there is no consent of the parties concerned, unless in the course of judicial proceedings.
In the case cited from Bosanquet and Puller, it seems the court gave effect to an authority conferred for public purposes, and to prevent the failure of a remedy provided against a public mischief, by construing a decision by a majority to be a decision by the whole number of a body of men, intrusted with powers of that nature. The chief justice, Eyre, in stating his opinion, carefully distinguishes that case from every case of mere private confidence, and the other judges recognize the distinction. It is observed in that case, that a different construction prevails with respect to private authorities, and authorities for the advancement of public justice. The authority conferred in a case of arbitration, although it may be considered as a means of doing justice, and employed with some advantage to the community, yet it is a private confidence, and altogether the act of the parties concerned.
Upon the whole, the directions given at the trial are confirmed by the opinion of the Court; and judgment is to be entered upon the verdict. (4)

 Rol. Air. 261, 262, Osborne vs. Rogton.

 2 Vent. 113.

 Soulsby vs. Hodgson, 3 Burr. 1474

 [Green vs. Miller, 6 Johns, 39. — Franklin vs. Osgood, 14 Johns. 590. — Patterson vs. Leavitt, 4 Conn. 50. — Commissioners of the Alleghany Corporation vs. Lecking, 6 S. R. 166. — McReady vs. The Guardians of the Poor, 9 S. & R. 94. — King vs Reeston, 3 T. R. 592. — Co. Lit. 181, b. — Story, Agency, 45, in note. — Sutton vs. Cole, 3 Pick. 232. — Damon vs. Granby, 2 Pick. 345. — Kupfer vs. Augusta, 12 Mass. 185. — Ed.]