# Robert G. Shaw & others *vs.* Norfolk County Railroad Company & others.

A railroad corporation, pursuant to votes of their stockholders and directors, conveyed all their property and franchises to three trustees, their survivors and successors, in fee, by deed conditioned to be void upon payment of certain bonds issued and to be issued by the corporation, and stipulating that the trustees and their successors might, upon any breach of condition, if they should see fit, take possession and apply the net proceeds to the purposes of the trust; or, upon nonpayment of interest or principal of the bonds for six months, and the written request of two thirds in amount of the bondholders, sell the granted premises by auction, and apply the proceeds to the payment of the bonds; and that any vacancy occurring in the board of trustees should be immediately filled by the remaining trustees, by appointment from among the bondholders. *Held,* that none of the bondholders need be made parties to a bill in equity brought by the trustees against the corporation for a foreclosure of the mortgage, and for an account of the sums due the bondholders, and for general relief.

*Held,* also, that such suit did not abate by the death of one of the trustees, but must be postponed until the vacancy was filled.

*Held,* further, " the proceedings of said company, whereby they conveyed their railroad in mortgage to " said trustees, having been ratified and confirmed by act of the legislature, that this conveyance was a valid mortgage of their property and franchise; and that the trustees, upon breach of condition, might maintain a bill in equity for a foreclosure of the mortgage, or to obtain possession of the mortgaged property.

Bill in equity, commenced by Robert G. Shaw, Jonathan A. Davis, and Charles T. Russell, trustees under a mortgage executed by the Norfolk County Railroad Company, on the 15th of October 1849, a copy of which was annexed to the bill.

The mortgage begins by reciting a vote of the stockholders, " that the directors be authorized to mortgage the railroad, franchise and property of the company, upon such terms as they shall deem proper, for the purpose of raising all the necessary means to complete the road, and to pay off all liabilities of the company ; " and two subsequent votes of the directors, by one of which, reciting the vote of the stockholders, and that " it is found necessary and deemed expedient to mortgage the said railroad and property to raise such sums of money as may be necessary to complete and equip the road, and to pay the existing liabilities of the company," it was " therefore voted that the railroad, franchise and property of the company be conveyed in mortgage to Robert G. Shaw, J. Amory Davis, and Charles T

Russell, who are hereby appointed trustees for that purpose," to secure the payment of certain bonds issued and to be issued by the company, not to exceed, in any event, the sum of seven hundred thousand dollars ; and by the other it was voted that the president and treasurer be authorized and directed to execute the mortgage, and " that said mortgage, when so executed, shall be binding on the company."

By the mortgage, which is in the form of an indenture between the corporation, of the first part, and the plaintiffs, " trustees of the bondholders under the above recited vote of the directors of said company," of the second part, the corporation " give, grant, bargain, sell and convey to the said Shaw, Davis and Russell, trustees as aforesaid, and to the survivor or survivors of them, and to their successors to be appointed in the manner hereinafter provided, in case vacancies should occur, forever, the railroad and franchise of said party of the first part, called the Norfolk County Railroad," (and described,) " including not only the entire road as located, but the stations, engine-houses, shops, wood-houses, iron, sleepers and other appendages, with all the lands thereto belonging and intended for the use and accommodation of the said road, as they now are, and as they may be, if repaired and improved, together with all the locomotive engines, passenger, freight, dirt and hand cars, and all the other personal property, belonging to said company ; all said last named property being subject to a deed of assignment " hereafter mentioned.

" To have and to hold the aforegranted franchise, premises and property, with all the rights, privileges and appurtenances secured to the party of the first part by the acts of the legislature which may have been and may be passed in their behalf, as well as all rights and privileges to said party of the first part in any other way appertaining and belonging, to the said Shaw, Davis and Russell, their survivors and successors, upon the trusts and for the uses herein set forth, and subject to the conditions herein made, to wit : " The first condition provides that the corporation shall, as soon as may be, issue bonds pursuant to the above recited vote of the directors, having upon their face

the fact stated that they are secured by this mortgage; the second fixes the dates, amounts, and times of payment of the bonds; and the third provides that " the party of the first part may retain possession of and manage said road and the business thereof, so long as they punctually fulfil and comply with the stipulations contained in said bonds, and do not permit said property to be wasted, or its value impaired through neglect or mismanagement." And the mortgage is further conditioned to be void upon the payment of the interest and principal of the bonds according to their tenor.

The mortgage contains the following additional provisions: " It is nevertheless further agreed by and between the parties hereto and their respective successors, that upon the nonobservance of the conditions herein stipulated, the said trustees and their successors may, if they see fit, take possession of the whole property herein conveyed, and shall thereupon have full power and authority, as trustees as aforesaid, to manage and control the same, and after providing for the expenses incident to working the road, and to keeping it in a condition suitable for business, to apply the net proceeds to the purposes of the trust.

" And it is further agreed by and between the said parties, that if at any time there shall be a breach of condition, by the nonpayment of interest when due, or the nonpayment of the principal when due, for the space of six months after the money so falls due, and two thirds in amount of the bondholders shall request it in writing, under their hands, the granted premises and property may, upon any such neglect, be sold at public auction by said trustees or the survivor of them, and their successors, and for that purpose the party of the first part hereby empowers them, by an authority irrevocable, both to sell and convey by deed or deeds, under their hands and seals, the said property and premises to the purchaser or purchasers ; provided, that after such neglect by nonpayment, and such request from the bondholders, they shall give three months' notice of any such intended sale, by publishing an advertisement thereof in one newspaper at least, in each of the counties of Suffolk, Norfolk and Worcester, in said commonwealth, stating therein the

time and place of sale; but any such sale may be defeated by said party of the first part, by paying, at any time before it takes place, whatever is due to the bondholders, and such further sums as are then chargeable upon this trust from managing the road, or any other just cause. And the said property may, upon the above terms and conditions, be offered for sale as often as a breach of condition for nonpayment occurs, until a sale actually is made; and such sale, when made agreeably to the foregoing provisions, shall forever bar all right to the granted premises and property on the part of the party of the first part. And upon the event of such sale, the said trustees and their successors, after defraying all expenses and charges upon the trust, shall, if the net proceeds of the sale be sufficient, pay up the bonds with the interest which has accrued thereon, whether the bonds are due or not. And in case such proceeds are inadequate for the purpose, they shall be distributed *pro rata* among the bondholders; the said trustees, however, being always accountable to said party of the first part for any balance remaining in their hands, after defraying all charges and expenses, and paying up said bonds and interest. It being understood and agreed, however, that the purchaser or purchasers of the granted premises and property shall in no case be held to see to the application of the purchase money to the trusts aforesaid.

" And it is further agreed by and between the said parties, that whenever a vacancy in said board of trustees shall occur, the remaining member or members shall immediately proceed and make an appointment from among the bondholders, to supply such vacancy, whether it happens by death, or inability to discharge the duty, or by resignation; and when the acting member or members have certified upon this deed, under his or their hand, such appointment, the person or persons so appointed shall then become trustees, with the same powers which they would have had if they had been a party to this instrument.

" And finally, the said Robert G. Shaw, J. Amory Davis and Charles T. Russell, trustees as aforesaid, for themselves and their successors, do covenant with the said Norfolk County Railroad Company and their successors, that they will conduct the affairs

and duties of said trust according to their best skill and judgment, and in case their duty requires them to take possession of said property, and to work said road, that their doings shall be open to the reasonable inspection and examination of the said corporation and bondholders, and that they will make a report of the state and condition of said road, with an account of the business and income thereof, as often as the by-laws shall require it of the directors. But it is understood and agreed that the said trustees and their successors are not to be liable in any contingency for the acts of each other, but that each is solely liable for his personal acts or negligence."

The bill, after setting forth the mortgage, alleged that said proceedings of the corporation, in mortgaging their road, were by an act passed on the 9th of April 1850, (*St.* 1850, *c.* 175,) ratified and confirmed by the legislature; that the corporation, pursuant to said mortgage, issued bonds to the full amount, and delivered a greater part of the same to their creditors; that they paid the interest on the bonds until January 1851, but failed to pay the interest which fell due on the 1st of January and the 1st of July 1851, and the 1st of January 1852, and nearly all of it still remained unpaid; that after the failure to pay the interest in January 1851, the plaintiffs received a paper signed by a large majority in value of the bondholders, requesting them to let the road remain in the management of the directors and stockholders until after the date appointed for the next payment of interest; and after the failure to pay the interest in July 1851, received a similar request; that the corporation, on the 18th of May 1849, had executed an assignment of all their lands and property, except their franchise, to George B. Upton, Sewell Tappan and Samuel Hooper, in trust to secure the payment of all the debts of the corporation; and that, as no bondholder had requested the plaintiffs to take any action in the premises, and as any attempt to take possession against the consent of the corporation would be impracticable, and if practicable, the whole net profits of working the road would probably be absorbed by a reasonable compensation for managing the same; and as the plaintiffs could get no title to the property included in said as-

signment, while the trusts thereof remained unperformed, they took no further steps in the premises by reason of such failure to pay interest in 1851; but that they were informed and believed that those trusts had now been nearly or substantially accomplished, and any remaining could be discharged.

The plaintiffs further alleged, that although they had never been requested in writing by the bondholders to take possession of and sell said railroad and property, pursuant to the mortgage, nor received any request from any bondholder, except as above stated; and although they had believed that, owing to the facts before stated, it was not the desire, nor for the interest of the bondholders that the plaintiffs should heretofore have taken any legal steps or action to get possession of said road; yet, another instalment of interest having since fallen due on the 1st of January 1852, which, with the interest which fell due in 1851, was wholly or principally unpaid, they believed it to be their duty to take proper steps to secure to the bondholders payment of the interest, and to provide for and ensure the payment of the bonds, out of the property held in trust for that purpose.

The bill then averred that the provisions of the mortgage in relation to taking possession of the road, and in relation to the sale thereof, were merely cumulative remedies, and that under the mortgage, and by reason of the breaches of the conditions thereof, the plaintiffs had the legal right to have possession of the mortgaged property for the purpose of foreclosing the corporation's right of redemption therein; and that Upton, Tappan and Hooper were unwilling to yield such possession to them voluntarily.

The bill then prayed for a discovery; for a surrender of that part of the mortgaged property held by Upton, Tappan and Hooper; (who were joined as defendants, and filed an answer, which is not material to the understanding of any of the points of law hereinafter reported;) for an account of the sums due the bondholders; for a decree that, unless the same be paid within a time to be prescribed, possession of the mortgaged property be given by the corporation to the plaintiffs for the purposes of foreclosure; for further relief, and for due process.

The corporation demurred to the bill, because the bondholders were not made parties thereto. And this demurrer was argued and decided at October term 1852.

*R. Choate & S. W. Bates,* for the corporation. All persons having an interest in the object of the suit ought to be made parties thereto. Story Eq. Pl. (5th ed.) §§ 72, 76 *& note,* 83, 130 *note. Hallett* v. *Hallett,* 2 Paige, 15. *Attorney General* v. *Green,* 2 Bro. C. C. 497. *Fell* v. *Brown,* 2 Bro. C. C. 278. *Beaumont* v. *Meredith,* 3 Ves. & B. 180. *Bainbridge* v. *Burton,* 2 Beav. 539. *Blain* v. *Agar,* 1 Sim. 37. *Browne* v. *Blount,* 2 Russ. & Myl. 83. *Williams* v. *Russell,* 19 Pick. 162. *Malin* v. *Malin,* 2 Johns. Ch. 239. As a general rule, there can be no foreclosure or redemption, unless all parties entitled to the proceeds of the mortgage are before the court. 1 Dan. Ch. Pract. 263. Story Eq. Pl. §§ 77, 81. *Palmer* v. *Carlisle,* 1 Sim. & Stu. 423.

The holders of the bonds secured by this mortgage have an interest in the object of this suit, and therefore ought to be made parties. (1.) Because they have a direct interest in the property and franchises in dispute, as they must look to the income of · the road, and ultimately to the road itself, for the payment of the interest and principal of their bonds ; and are in fact the only real parties in interest as mortgagees, the plaintiffs being only agents for them, though not appointed by them. Story Eq. Pl. §§ 81, 207, *& notes. Holland* v. *Baker,* 3 Hare, 68. *Calverley* v. *Phelp,* 6 Madd. 229. *Whistler* v. *Webb,* Bunb. 53. (2.) Because they have adverse interests to the defendants in the account to be taken pursuant to the prayer of the bill, and will be necessary parties to that account. Story Eq. Pl. § 191. (3.) Because they have an interest in the time within which payment shall be decreed to be made. (4.) And in the persons to whom payment shall be decreed to be made ; for the court may decree the money to be paid directly to them. Story Eq. Pl. § 207. *Palmer* v. *Carlisle,* 1 Sim. & Stu. 423. *Wetherell* v. *Collins,* 3 Madd. 255. *Osbourn* v. *Fallows,* 1 Russ. & Myl. 741. (5.) Because the ultimate question to come before the court is a new question, involving the interests of the public, and of numerous individuals ; and the decree of the

court may fix liabilities, both direct and consequential, upon the bondholders, and make them active parties to the performance of the decree. (6.) Because it will be necessary for the court to determine whether the duties of the trustees are ended, and their trusts performed, by foreclosure, and therefore whether the trustees or the bondholders are entitled to possession. (7.) Because they are directly interested in the management of the property after it shall come into the possession of the trustees, and should therefore be heard, as to the duties which shall then devolve and the powers which shall be allowed to the trustees. (8.) Because, if a foreclosure be decreed, the value of the road must be determined, for the purpose of applying the amount in discharge of the bonds, and holding the balance, if any, in trust for the company. (9.) Because they are interested in the more comprehensive questions, whether the court have any authority to transfer either to the bondholders or the trustees the property and franchise which the legislature have vested in the corporation, in trust for the public; and whether it is expedient for the court to exercise the authority, if they have it. (10.) Because they are entitled to choose which of the specific remedies provided in the mortgage they will avail themselves of, even after the trustees have obtained leave to foreclose.

At least, they are necessary parties; and the burden of proving that they come under one of the recognized exceptions, and therefore need not be made parties to the suit, is upon the plaintiffs. Story Eq. Pl. §§ 122, 126 *& notes.* *Adair* v. *New River Co.* 11 Ves. 444. *Newton* v. *Egmont,* 4 Sim. 585, and 5 Sim. 130. And the reason why they are not brought in must be averred in the bill. Story Eq. Pl. § 116.

It cannot be said that the bondholders are not known, for the bill discloses that it is the duty of the trustees to know who they are. But if it is impossible or difficult to join all the bondholders, yet enough should be joined, in behalf of all, to try fairly the legal and equitable rights of the bondholders and all persons interested. Story Eq. Pl. §§ 107, 123 *& note.* *Baldwin* v. *Lawrence,* 2 Sim. & Stu. 18.

*S. Bartlett,* for the plaintiffs.

BIGELOW, J.   The rule of equity pleading, that all persons interested in the subject matter of the suit, and whose rights may be affected by a final decree, must be made parties to the bill, is subject to several exceptions, which are as well established as the rule itself.

Whenever the parties interested are very numerous, so that it would be difficult or impracticable to bring them all before the court, and the different interests involved in the suit may be fairly and fully represented and tried without joining them, a strict adherence to the general rule is not required.   This is true in all cases in which certain parties to a suit are entitled to be deemed the full representatives of the legal and equitable rights of many persons, so as to bind their interests under the decree, although they are not and cannot be made parties.   Thus in the *case of the Bubble*, in 1720, although several persons were interested, yet, as they had lodged a general power and authority in some few only, the court of chancery, in order to avoid inconvenience from making such numerous parties, restrained them to those particular persons who were entrusted with this general power; and this case was cited with approbation by Lord Hardwicke in 2 Atk. 145; and the doctrine was affirmed by Sir Thomas Plumer, on a full review of the authorities, in *Meux* v. *Maltby*, 2 Swanst. 282.   So too it has been held, that, where persons are made trustees for the payment of debts and legacies, a suit may be sustained in which the trustees only are either plaintiffs or defendants, without joining the creditors or legatees for whom they are trustees, and whose rights and interests are directly involved in the case.   *Fenn* v. *Craig*, 3 Y. & Col. Exch. 216.   Upon this principle, it has been decided by this court, that, in a bill concerning the title to the assets of an insolvent debtor, it is sufficient, without joining the creditors, to make the assignees parties, who alone have the right to claim the property, the legal title being in them; and who are authorized and empowered, and whose duty it is, to represent the interests of and to act for all the creditors interested in the trust. *Stevenson* v. *Austin*, 3 Met. 474, 480.   In like manner it has been determined that a trustee, holding a mortgage in trust for

several creditors, may maintain a bill in equity to foreclose, without joining his *cestuis que trust* as parties.    *Swift* v. *Stebbins*, 4 Stew. & Port. 447.    See also *Alexander* v. *Cana*, 1 De Gex & Sm. 415; Story Eq. Pl. §§ 142, 215, 216.

The case at bar clearly comes within the principles on which these decisions rest.    The bondholders, for whose benefit the mortgage set out in the bill was made, are very numerous ; and the bonds being assignable, it would be very difficult, if not wholly impracticable, to ascertain with accuracy, at any given time, who were the owners of them, so as to make them all parties to a suit in equity.    Nor is it necessary that any of them should be joined to represent their own rights and interests and those of the other *cestuis que trust* under the indenture.    The main purpose of the instrument was to vest the property in trustees, with full power and authority to act as the representatives of the *cestuis que trust* in all things relating to their common rights and interests.    The sole object of the bill is to secure and protect these rights and interests.    The trustees have no adverse claims against their *cestuis que trust*.    On the contrary, they only seek, as the representatives of the bondholders, to enforce the trusts created for their benefit, and in which they all have a common interest.    It is sufficient therefore that the court have before them those who are the full representatives of the parties beneficially interested in the property, so that those interested will be bound by the decree.

We do not see that those persons who held bonds of the railroad corporation before the date of the mortgage stand upon any different footing, as to being made parties to the bill, from those who received their bonds afterwards.    So far as they claim any benefit or interest under the indenture, they are fully represented, like the others, by the trustees.    If they have not adopted the mortgage, and do not claim any interest in it, then it is clear that they need not be made made parties.    *Allen* v. *Knight*, 5 Hare, 272.                    *Demurrer overruled.*

The corporation afterwards filed an answer, admitting their execution of the mortgage to the plaintiffs, and of the assign-

ment to Upton, Tappan and Hooper, the issuing of the bonds, the nonpayment of interest, and the receipt of the requests from the bondholders, as alleged in the bill.

The answer also admitted that, on the 9th of April 1850, the legislature passed an act containing the following clause : " The proceedings of said company, whereby they conveyed, on the 15th of October last, their railroad and property, in mortgage, to Robert G. Shaw, J. Amory Davis and Charles T. Russell, trustees of the bondholders in said mortgage mentioned, to secure the holders of said bonds the payment of the same, are hereby ratified and confirmed ; " but denied that this act, or any other act of the legislature, confirmed or ratified any contract under which the plaintiffs have any right to take possession of said road, for the purpose of foreclosing the corporation's equity of redemption.

The answer then alleged that since the last continuance, to wit, about the middle of May 1853, Robert G. Shaw, one of the plaintiffs, had deceased, but the surviving trustees had neglected to comply with the provision of the mortgage for an immediate appointment from among the bondholders, to supply the vacancy ; that the corporation had good reason to believe, and did believe that such appointment might materially affect the continuation and issue of this suit, since they had been informed and believed that all the bondholders desire to discontinue this suit ; wherefore the corporation moved for a continuance until the vacancy should be filled, and the new trustee summoned in.

The answer then alleged that a large majority, if not all, of the bondholders desired that the prayer of the bill should not be granted ; and, immediately upon learning that the bill had been filed, sent to the plaintiffs a paper signed by a large majority of the bondholders, protesting against the plaintiffs' action in bringing of this suit, and requesting them to discontinue it.

The corporation further alleged that in December 1852 and January 1853 they published notices to the bondholders of their readiness to pay all dues upon the bonds upon presentation of the coupons thereon at their treasurer's office in Boston ; and had done every thing in their power to notify all bondholders of

such readiness; and a large amount of said coupons had been presented accordingly, and nearly all the interest overdue had been paid by the corporation, and accepted by the bondholders, and among others by the plaintiff Shaw, as holder of a large amount of said bonds; and that the corporation had been at all times ready since such publication of notice, and had done every thing in their power, to pay all the overdue interest.

The answer then denied that the provisions of the mortgage in relation to taking possession of the road, and in relation to the sale thereof, were merely cumulative remedies; and averred that said two specific remedies were the only remedies provided in case of a breach of condition, which could be availed of by the plaintiffs, and that the mortgage gave no right to the plaintiffs to take possession of the road for the purpose of foreclosure; that, even had the corporation intended by the mortgage to give that right, and even though the terms of the mortgage should seem to give it, (which the corporation denied,) yet such agreement could not be availed of by the plaintiffs in the manner prayed for, because contrary to law, equity and public policy; and that, even had the legislature ratified and confirmed such agreement, (which the corporation denied,) such ratification would not have given to the plaintiffs the right prayed for; and that if the plaintiffs had any right to take possession of the mortgaged property, for the purpose of foreclosure, they had a plain and adequate remedy at law.

The question, whether the suit should be continued or postponed until the vacancy occasioned by Shaw's death should be filled by the surviving trustees, was argued and decided at November term 1853.

*Choate & Bates,* for the corporation, cited *In re Harrison's Trusts,* 15 Eng. Law & Eq. R. 345; 1 Cruise Dig. tit. 12, *c.* 4, § 37; *Green* v. *Miller,* 6 Johns. 41; Caldw. Arb. (Smith's ed.) 203 *note; Towne* v. *Jaquith,* 6 Mass. 46; *Short* v. *Pratt,* 6 Mass. 496; 4 Kent Com. (6th ed.) 325; *First Parish in Sutton* v. *Cole,* 3 Pick. 244; *Townsend* v. *Wilson,* 1 B. & Ald. 608.

*Bartlett,* for the plaintiffs. This is, in effect, a motion that the suit shall abate. But the grant and habendum of the mort-

15*

gage are each expressly to the trustees as joint tenants. In the \se of joint tenants, the death of one does not abate the suit; nor is a bill of revivor necessary. *Fallowes* v. *Williamson*, 11 Ves. 309. *Boddy* v. *Kent*, 1 Meriv. 364. And a similar provision is made, where the interest of the deceased party passes to the surviving demandants, whether the action be personal or real. Rev Sts, c. 93, §§ 12, 16. The provision in the mortgage, for the appointment of a new trustee to fill the vacancy, is a matter between the trustees and the bondholders, and the corporation have no interest in it.

MERRICK, J. To decide this question, it is necessary to look at the provisions of the mortgage, and see for what purposes it was made; to whom it was made; and what are the breaches alleged. It is made to secure debts of the corporation to the amount of $700,000, represented by instruments which are called bonds. It is made to the three original plaintiffs as trustees, with certain precisely defined powers, to hold for the benefit of such creditors. The breach is the nonpayment of accruing interest on the bonds.

There being a breach of the condition, by a failure to pay the interest as it became due, the trustees are to exercise their powers for the benefit of the creditors. These powers, so far as defined in the mortgage, are either to sell the property by auction, if two thirds in amount of the bondholders require; or to take possession of it, if they think fit, without any movement on the part of the creditors.

The power and duty of the trustees, in the first alternative, are merely ministerial; they have no discretion; but must implicitly follow the requisition made upon them. Their authority to act upon such requisition is expressly given to the trustees and their successors, and may be exercised either before or after they have availed themselves of their discretionary powers, which neither advance or impede it.

If the bondholders do not move, the trustees, in their discretion, may take possession of the whole property conveyed, manage and control it, and, after paying expenses, apply the income to the purposes of the trust, that is, to the payment of

the bonds.   This power is conferred on the trustees jointly; and is of course to be exercised by them jointly.   When power is conferred on two or more persons jointly, they cannot sever, but must act jointly.   This general principle is conceded by the plaintiffs; but they deny that the corporation can avail themselves of it in support of their motion.

By the contract, the mortgagors were to remain in possession until breach of condition; and then the trustees, if they should see fit, might take possession.

Now this bill was rightly brought by the three trustees, in the lifetime of Shaw, all of them coöperating.   Two alone, without coöperation or communication with the third, had no right to bring it, nor to take possession of the mortgaged property; and as the bill is prosecuted for that purpose, its prosecution, from the origin to the close, must be the joint act of the trustees.   If, before this suit had been commenced, one of the trustees had died, the remaining two could not have taken possession, nor brought a bill to enable them to do so, until a new trustee was appointed; for the board of trustees is to be constantly kept full, and the act of taking possession must be the joint act of them all.

But the bill having been rightly commenced, it is not abated by the death of one of the trustees; but is only postponed until the survivors, in the exercise of their power, shall supply the vacancy.   The mortgage conveys the property to the trustees, "their survivors and successors."   Upon the death of one or more of the trustees, the estate remains in the survivors or survivor; and being upon trust, the trust also remains, and is to be executed.   The first duty to be performed, to enable the board of trustees to do discretionary acts, is to fill the vacancy.   As this taking possession of the property, without any requisition of the bondholders, is of that character, they must appoint a new trustee before it can be done.

And the corporation may well take advantage of the failure to make such appointment; for they are greatly interested in the action of the board.   The appointment of a new trustee is not only essential by the terms of the contract, but may mate-

rially affect their rights and interests. It may have the effect to stop these proceedings altogether. It is uncertain what would have been the opinion or determination of the board of trustees, in respect to the further prosecution of this suit, or the attempt to obtain possession of the property and control of the road, if Shaw had survived. The circumstances are greatly changed since it was commenced. A great amount of the interest has been paid, including that which was due on the bonds held by Shaw himself. Perhaps they would have concluded that the management of the road by the corporation would now be the most beneficial course for all concerned.

It is equally uncertain what will be the effect of the appointment of a new trustee. He is to be selected from the bondholders, and will have a personal interest in adopting the best measures to promote their common interest. It is to be presumed that the surviving trustees will exercise their power in good faith. This is a trust; in executing it, they are not to consult their own interest merely, but the common interests of all the *cestuis que trust*. They will then choose some discreet and capable person. It is impossible but that his influence will be felt. And he will judge with the others whether, in the present state of affairs, it is best that the trustees should get possession, and take the road out of the control of the corporation.

But if the latter course shall be determined upon, the corporation have a great interest in having a full board of trustees. This is a vast property, the management of which, while it devolves upon them large responsibilities, vitally affects the interests of all the stockholders. For these reasons, it is highly important that the board should be full.

The case must therefore be postponed for a time sufficient to enable the surviving trustees, not rashly or hastily, but after proper deliberation, to appoint a new trustee in the stead of Shaw.                               *Postponement granted.*

The surviving trustees appointed a new trustee in the place of Shaw. And the case was argued upon the bill and answer at October term 1854.

*Bartlett,* for the plaintiffs. The bill asserts, and the answer admits that, when the bill was filed, the corporation had neglected to pay three instalments of interest due on the mortgage. The bill prays for the usual conditional judgment, to the end that the interest be paid, or possession yielded to the mortgagees and trustees. It also prays for general relief.

No argument is required to show that the validity of a mortgage of a railroad, confirmed by the legislature, cannot be disputed by the mortgagors.

The plaintiffs have no adequate remedy at law; the character of the property mortgaged, being a railroad franchise and property incidental to its exercise, precludes the statute remedy by writ of entry, and brings the case within the equity jurisdiction of this court over suits to foreclose mortgages. Rev. Sts. *c.* 81, § 8. The remedies for breach of condition, contained in the mortgage itself, are cumulative, not exclusive.

The first provides simply for taking and keeping possession of the road, until the mortgage debt can be paid from the net proceeds of working the road; and is in terms to be exercised by the mortgagors, only "if they see fit." And the answer sets up no offer or willingness to yield possession for this purpose; but substantially denies the right of possession for any purpose; and to take possession *in invitum,* to work out this remedy, would be impossible.

The other provision does not allow a sale until after a breach of condition has continued six months, and a written request of two thirds of the bondholders. To construe this as an exclusive remedy for breach of condition would be to leave the rights of one third of the bondholders at the mercy of the majority; and would compel the creditors, if the property were in a depressed condition at the time, to acquiesce in the continued enjoyment of the rents and profits by the mortgagors, or submit to the sacrifice of a sale. A power of sale, in a mortgage or other contract, does not exclude other legal remedies. *Marriott* v. *Givens,* 8 Alab. 694. *Herkimer Manuf. & Hydraulic Co.* v. *Small,* 21 Wend. 273. *Troy Turnpike & Railroad* v. *M' Chesney,* 21 Wend. 296. *Hartford & New Haven Railroad*

v. *Kennedy*, 12 Conn. 499.    *Selma & Tennessee Railroad* v. *Tip ton*, 5 Alab. 787.    *Instone* v. *Frankfort Bridge*, 2 Bibb, 576.

If this bill does not lie to foreclose, it may be maintained to enforce the yielding of possession under the provisions of the deed.    *Dimmock* v. *Bixby*, 20 Pick. 368.

*Choate & Bates*, for the corporation.  A corporation cannot sell or mortgage its franchise, without express authority of the legislature.    *Doe* v. *St. Helen's & Runcorn Gap Railway*, 2 Railw. Cas. 756, and 2 Ad. & El. N. R. 364.    *East Anglian Railways* v. *Eastern Counties Railway*, 7 Railw. Cas. 150, and 11 C. B. 775.    *Arthur* v. *Commercial & Railroad Bank of Vicksburg*, 9 Sm. & Marsh. 394.    *Campbell* v. *Mississippi Union Bank*, 6 How. (Miss.) 625.    *People* v. *Bank of Hudson*, 6 Cow. 217. *Slee* v. *Bloom*, 19 Johns. 456. 28 Amer. Jurist, 92.  A railroad, in this commonwealth, " is regarded as a public work, established by public authority, intended for the public use and benefit, the use of which is secured to the whole community."  " It is true, that the real and personal property, necessary to the establishment and management of the railroad, is vested in the corporation; but it is in trust for the public.  The company have not the general power of disposal, incident to the absolute right of property ; they are obliged to use it in a particular manner, and for the accomplishment of a well defined public object; they are required to render frequent accounts of their management of this property to the agents of the public ; and they are bound ultimately to surrender it to the public at a price and upon terms established."  By Shaw, C. J., *Worcester* v. *Western Railroad*, 4 Met. 566.  The interests of owners of lands taken, under the right of eminent domain, for the specific purpose of being used by that corporation, for their railroad, are also affected by the alienation.    *Dovaston* v. *Payne*, 2 Smith's Lead. Cas. 90.  A railroad corporation cannot therefore, by sale or mortgage, relieve themselves from the performance of their duties to the public. Their franchise cannot be alienated by deed, nor in any way except by a transfer of the shares of stock.  If all the property of a railroad corporation can be separated from their franchise, and alienated, still the purchasers have no power to use the railroad,

and the public is defrauded of its right to have the use of the same as a public highway.

The *St.* of 1850, *c.* 175, § 2, confirming the proceedings of the corporation, is not to be construed as sanctioning any trans-fer of title, or giving the plaintiffs any right of foreclosure; but merely as authorizing the plaintiffs, leaving the road in charge of the corporation, to take the tolls and earnings and apply them to the payment of the mortgage debts, in analogy to the provisions of law in case of attachment of the franchise of a turnpike corporation. Rev. Sts. *c.* 44, §§ 11–20.

The plaintiffs have no rights except those which are given them by the deed. The general words in the deed, indicating a mortgage, are limited by the subsequent specific provisions. The deed does not give the plaintiffs the estate absolutely on a breach of condition; consequently there is no equity of redemp-tion, and no right of foreclosure. The only trusts declared in the deed are, upon breach of condition, either to take possession of the property granted, and apply whatever proceeds arise there-from to the payment of the bonds and their interest; or, upon the request of two thirds of the bondholders, to sell the property. But even if the specified remedies are cumulative only, and the plaintiffs take as mortgagees, and not merely as trustees, the deed is merely a Welsh mortgage, and does not authorize the trustees to foreclose, but only to hold until the mortgage debts are paid. 3 Pow. Mortg. 1148 *a.* 1 Pow. Mortg. 375. 2 Hil-liard on Mortg. 17. *Sampson* v. *Pattison*, 1 Hare, 533.

But if this is merely a common mortgage, with power to fore-close, the plaintiffs have an adequate remedy at law, and the court have no jurisdiction of it in equity. *Lowell* v. *Daniels*, 2 Cush. 234. *Shaw* v. *Gray*, 23 Maine, 174.

The decision was made in June 1855.

MERRICK, J. Several considerations have been urged upon our attention by the defendants as valid objections to the main-tenance of the present bill. It is insisted, in the first place, in their behalf, that a franchise created by the legislature, and con-ferred by their authority on a particular party, cannot be lawfully sold and transferred by him to another. But if this general

proposition, concerning which it is unnecessary at this time to express any opinion, should be admitted to be strictly correct, it could be of no advantage to the defendants in the present case, because their conveyance to the plaintiffs has been ratified and confirmed by a subsequent statute duly enacted. *St.* 1850, *c.* 175, § 2. Besides, by the deed of indenture recited in the bill, not only the franchise of the Norfolk County Railroad Company, but also all their real and personal property, consisting, beside other things, of lands, houses, stations, iron, sleepers, cars and engines, were conveyed to the plaintiffs, to be held by them in trust, and as security for the payment of the bonds which it was the purpose and intention of the corporation to issue and deliver to their creditors. And if any doubt could ever have been supposed to exist in relation to the transfer of the franchise, there certainly could have been none concerning the conveyance of the lands and personal property described in the deed of indenture. And there may be a suit as well for the foreclosure, as for the redemption of lands subject to the incumbrance of a mortgage. Rev. Sts. *c.* 81, § 8.

But the defendants further object, that the bill cannot be maintained, because there was no such conveyance to the grantees as would in law give to them an estate absolutely upon a breach of the condition upon which it was made; and consequently that there was no equity of redemption in the grantors, and could be no necessity or occasion for any process to aid in effecting a foreclosure. This position is predicated upon the assumption, either that the grantees are limited to the specific remedies provided for in the deed of indenture, or that the legal effect of the deed is to create only, and nothing more than, a Welsh mortgage. But neither the one nor the other of these assumptions can be sustained. Welsh mortgages are frequently mentioned in the English books. They resemble, says Chancellor Kent, the *vivum vadium* of Lord Coke, under which the creditor took the estate, to hold and enjoy it without any limited time of redemption, and until he repaid himself whatever was due to him out of its rents and profits. But they are now entirely out of use in that country. 4 Kent Com. (6th ed.) 137 And they

do not appear ever to have been recognized or practically known among the modes of conveyancing which have prevailed in this commonwealth. They cannot exist under our statute, which provides that when the condition of any mortgage of real estate has been broken, the mortgagor and his assigns may redeem the estate at any time before a legal foreclosure has been effected. Rev. Sts. *c.* 107, § 13.

Every circumstance attending the transaction has the most manifest tendency to show that the deed of indenture executed by the defendants, and conveying their railroad, lands and personal property to the plaintiffs, was intended by them to be, as it in fact is, a mortgage of the granted premises. It began with a vote of the stockholders, authorizing the directors to mortgage the railroad franchise and property of the company, to raise thereby such sums of money as should be found necessary to complete and equip the road, and pay off all existing liabilities. In the measures adopted by the directors, they recited, and professed to be governed exclusively by the terms of, that vote. And in pursuance of it, they authorized and desired the president and treasurer to execute the mortgage in the name and behalf of the company. And the instrument which was executed under that authority was afterwards ratified and confirmed by act of the legislature, as a valid and effectual mortgage. *St.* 1850, *c.* 175, § 2. The deed of indenture contains in itself all the provisions, and has all the characteristics of that species of conveyance. It conveys an estate in fee to the grantees, to have and to hold the same to them, and their survivors and successors, but upon express condition, that if payment of the bonds and the interest accruing upon them shall be truly made, as the same respectively fall due, the indenture itself shall thereupon become void and of no effect. The conveyance, being thus defeasible when the condition annexed to it shall have been performed according to its legal effect, and by means of such performance, can be regarded in no other light than in that of a mortgage of the estate conveyed. *Erskine* v. *Townsend,* 2 Mass. 493. *Nugent* v. *Riley,* 1 Met. 117.

And neither the right conferred on the grantees to take pos-

session, upon nonperformance by the grantors of the stipulated condition, of the whole of the mortgaged property, and to manage and control it, and apply the net proceeds arising from its use to the purposes of the trust; nor the duty imposed upon and assumed by them to proceed and take possession of the premises upon the requisition of two thirds of the bondholders, according to the special provisions relative to that subject contained in the deed, affects the nature and character or legal effect of the instrument itself. It was not less a mortgage than it would otherwise have been, because the grantees were invested by special agreement with an additional authority beyond what they would have possessed without it, and which they had no right to exercise except under an express stipulation. And so long as they took no advantage of it, and nothing was done under it, the rights and interests of the respective parties to the conveyance, and their relations to each other, were in no respect changed or affected by it. " A power to sell, *executed* to one who relies upon such power, and who expects and intends to purchase an absolute estate, will without doubt pass an unconditional estate to the purchaser. But while the power remains unexecuted, the relation of mortgagor and mortgagee subsists, if that was the relation created by the instrument, separate from the power." *Eaton* v. *Whiting*, 3 Pick. 491.

But this bill may well be maintained by the plaintiffs upon another and different ground. By the contract expressed in the deed of indenture a trust is created, to the due performance of which they have firmly bound themselves and their successors. In the discharge of the duties thus created and thus assumed, the possession, management and control of the estates and interests conveyed to them may, and as it seems to us have already, become indispensable. For the due enforcement and regulation of such a trust, ample power is found in the jurisdiction of this court as a court of equity; and the present bill is an appropriate course of proceeding to procure for that purpose the intervention and exercise of its authority.

The bill prays for general relief, as well as for a specific decree in relation to the foreclosure of the equity of redemption. And

upon the facts stated in it, and which upon the hearing were admitted to be true, we can see no reason why the plaintiffs ought not to be put in immediate possession of the mortgaged property, in order that the purpose for which the conveyance was made may be accomplished, and the trust created by it be properly executed. The defendants have neglected, and still neglect, to pay the interest which has accrued upon a large proportion of the bonds, which were duly issued, and which are held by the creditors of the corporation. These bondholders are entitled to demand the money which has become due, and it is the duty of the trustees to make use of the discretionary power which was conferred upon them for the express purpose of ensuring the payments to which the creditors should severally become entitled. To that end possession of the mortgaged property is indispensable, and the plaintiffs ought therefore to have a decree by force of which they can obtain it.

We see no ground for the suggestion, that the bill cannot be maintained, because the plaintiffs have an adequate and complete remedy at law. It is obviously quite the reverse. The nature of the property, with the possession of which they seek to be invested, renders it impossible for them to find a remedy in a single suit at law. There must be, if resistance is made to their claim of possession, unless resort be had to the equitable jurisdiction of the court, actions real in different counties, as well as actions personal, besides such other and further proceedings as may be suitable to obtain the control and enjoyment of the franchise of the corporation. And beside all this, the trust is to be regulated, as well as the property possessed. To control all this property, to enforce these obligations, and to preserve the rights of all parties interested, the court can, only when exercising the equitable powers conferred upon it, afford a complete and adequate remedy.

A decree properly prepared must therefore be entered in behalf of the plaintiffs, entitling them to have immediate possession of all the mortgaged property.

The following decree was afterwards entered:

" This cause having been heard upon the bill and answer and it thereupon appearing to the court here, that the said Norfolk County Railroad Company did duly make, execute and deliver to the said Robert G. Shaw and others the said deed of trust and of mortgage, and did also duly make, execute, issue and deliver to divers persons their bonds for the payment of money and the interest accruing thereon, as in the said bill is particularly set forth : and it further appearing to the court here, that the said Norfolk County Railroad Company have since failed and neglected, and still do fail and neglect, to pay to the respective holders the interest which has accrued and become due upon said bonds according to the tenor thereof, and to fulfil and comply with the stipulations contained in the same, and that, by reason of such failure and neglect to pay said interest and to fulfil and comply with said stipulations, the plaintiffs, being the present trustees under said deed, are entitled, as against said Norfolk County Railroad Company and its successors, to take, have and hold possession of the whole property conveyed to the said Robert G. Shaw and others in and by the said deed of trust and of mortgage, and to manage and dispose of the same according to law, for the purposes in the said deed specified :

" It is therefore thereupon ordered and decreed by the court here, that possession of all the said property, rights and estate, conveyed in and by the said deed to the said Robert G. Shaw and others, be delivered to the plaintiffs by the said Norfolk County Railroad Company and by their officers, agents, servants and successors, and by any and all persons and corporations, their officers, servants and agents, who have derived or acquired any right, title or claim thereto from or under said Norfolk County Railroad Company, or in consequence of any act done or vote passed by them, since the commencement of the proceedings against them upon the bill aforesaid ; to be held, managed and disposed of by the plaintiffs according to law, under the provisions of the deed aforesaid, until the further order of this court relative thereto.

" And it is in like manner further ordered and decreed, that

the said Norfolk County Railroad Company, their successors and assigns as aforesaid, and their respective officers, agents and servants be and hereby are severally required and commanded, forthwith, upon demand of the plaintiffs, to deliver to them possession of the said property, rights and estate, and of any and every part thereof, and are forbidden and enjoined from thereafterwards intruding or interfering with the plaintiffs in their exclusive use, occupation and enjoyment of any part of said property, rights or estate, without, or until, the further order of this court relative thereto."