FREDERICK D. ROBBINS, administrator, *vs.* DOMINICK HORGAN & others.

Middlesex.          January 23, 24, 1906. — June 21, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & SHELDON, JJ.

*Agency. Executor and Administrator. Power of Attorney.*

Where a power of attorney gives to two persons named a bare authority to receive money from a fund to be distributed, they not being partners in business and having no interest in the fund, neither of them alone has authority to receive the money without the consent of the other.

A power of attorney from the next of kin in a foreign country of one who died in this Commonwealth authorizing the payment of their shares of the estate of the deceased to two persons named as attorneys, one being a resident in this Commonwealth and the other a United States consul in the foreign country, does not give authority to the attorney in this Commonwealth to receive payments without the consent of his co-attorney; and if the administrator of the estate of the deceased pays the amounts of the shares of the principals to the attorney in this country without the knowledge or consent of his co-attorney in the foreign country, and the attorney to whom the payments are made absconds with the money, such payments will be disallowed in the accounts of the administrator and he will be held liable to the principals to make good their loss. If the attorney to whom the money was paid appeared in behalf of the principals to consent to the appointment of the administrator this does not increase his authority to receive the money.

APPEAL, by the administrator of the estate of Joseph H. Horgan, from a decree of the Probate Court disallowing certain payments made by him to or under the order of one George A. Smythe and charging the administrator with such amounts with interest. The respondents were the heirs at law and next of kin of Horgan, all living in Ireland.

The case was heard by *Morton*, J., who made the following memorandum of decision :

" The appellant, Robbins, was duly appointed administrator of the estate and duly qualified by giving bonds as such. Thereupon he became bound to administer the estate according to law and to distribute the proceeds, if any, amongst those entitled to the estate. The fact that his appointment was procured by Smythe and that he was in Smythe's office and acting under his direction did not release him from the obligations imposed upon him by law and by his bond. The estate amounted to about $11,000 and there are six heirs living in Ireland. There were some debts due from the testator and there have been of course some expenses incurred in the settlement of the estate. But it is not denied that there was a large surplus for distribution amongst the next of kin. They have never received any of it.

" The administrator's defence and excuse is that he has paid it over to Smythe as attorney for the heirs or next of kin and that Smythe appropriated it and absconded. The defence being payment, the burden is on the administrator. To establish Smythe's right to receive the money and to justify himself in paying it over, the administrator relies upon a power of attorney from five of the heirs to Smythe and one Lucien J. Walker, the United States consul at Queenstown. The power of attorney was a joint one. It was drawn in Smythe's office and sent by him to Walker. As originally drawn, the names of the principals were left blank and Smythe's name was inserted as the sole agent or attorney. This was the condition in which it was when received by Walker. Under Walker's direction, the names of five of the heirs were inserted as the principals with their residence and his own name was inserted as attorney in addition to that of Smythe and the instrument altered throughout to correspond with those changes, and the month and the day of the month

were inserted.  In this condition it was executed by the five heirs.  The other heir, Ellen Horgan, never executed it and never authorized Walker or Smythe to collect or receive her share of the estate.  Walker's name was inserted in the power of attorney because of doubts entertained by Walker and his secretary Mr. Piatt as to the financial responsibility of Smythe.

" When completed the power of attorney was forwarded by Walker to Smythe and was duly received by him and the contents were known to Robbins.  Upon the receipt of the power of attorney, Smythe caused a petition praying for the appointment of Robbins as administrator to be presented to the Probate Court.  This was signed by the five heirs by Smythe as their attorney.  As already stated Robbins was duly appointed and gave bond as required and duly returned an inventory of the estate.  He reduced the estate to possession and within a short time, by Smythe's direction, transferred and paid over to him substantially the whole of it.  This was done without any knowledge on the part of Walker of what was transpiring and without any authority from him to the administrator to make such payments or to Smythe to receive them.  Walker supposed, if that is competent and material, that Smythe would attend to such legal matters as required to be attended to here, but that any money that might be collected or realized would be sent to him for distribution among the heirs.

" Assuming that under the power of attorney to himself and Walker Smythe would have authority to attend to all such legal matters as pertain to the settlement of the estate here, nevertheless I do not think that the administrator was justified in paying over or transferring to Smythe the funds and property of the estate without authority from Walker to Smythe or himself.

" Walker now says that Smythe had no such authority and I find as a fact that he had not, and that the administrator had no authority from Walker to pay over or transfer to Smythe the funds or property of the estate.  I think that in the absence of such authority he was not warranted, the power of attorney being a joint power, in paying over or transferring the funds and property of the estate to Smythe as he did.  The heirs did not know of it and have done nothing to ratify or approve of what the administrator has done.

" I do not find that the administrator profited personally by Smythe's wrongdoing, but it is almost inconceivable that he should not have been put upon inquiry as to the use which Smythe was making of the funds and property transferred to him."

The remainder of the memorandum of decision related to certain items in the accounts of the petitioner, in regard to which the respondents had taken an appeal and which were allowed by the justice.

The petitioner contended at the hearing, and asked the justice to rule, that Smythe, as one of the attorneys named in the power of attorney, had, by virtue thereof, authority to receive payment of any and all sums belonging to the heirs who signed the power of attorney.

The justice refused to rule as requested, and upon all the evidence in the case found for the respondents, and ordered that a decree be entered modifying the account as stated in the memorandum of decision, directing that if the parties could not agree the case should be sent to an auditor to state the amount. The petitioner alleged exceptions.

*S. H. Tyng,* (*T. J. Kenney* with him,) for the petitioner.

*W. H. H. Tuttle,* for the respondents.

HAMMOND, J.    The crucial question is: Was the payment to Smythe the agent a payment to his principals? Smythe's only authority to receive the money was under the power of attorney. Under that power he was a joint agent with Walker. They were private agents as distinguished from public agents. They were not partners in business, nor did they have any interest in the fund to which their principals were entitled. They were mere agents having only a bare authority, and both constituted one agent and neither was a complete agent by himself. In the language of Coke they " had but a mere and bare authority and they both [did] in law make but one attorney." Co. Lit. 49 b. The powers of the agency were conferred upon neither acting alone and without the consent of the other, but only upon both acting together. The logical result of such a situation is that the act of both, or at least the consent of both to the act of one, is essential to the valid exercise of any power of the agency ; and such is the law. Co. Lit., *ubi supra. Towne*

v. *Jaquith,* 6 Mass. 46.   *Copeland* v. *Mercantile Ins. Co.* 6 Pick.
198.   2 Kent Com. 633, and cases cited.   Story, Agency, (9th
ed.) § 42, and cases therein cited.   See also for collection of
some of the authorities, 1 Am. & Eng. Encyc. of Law, (2d ed.)
1057.

The payments were made to Smythe alone.  · He appropri-
ated the money to his own use and absconded.   The justice
found that the blank power as originally drawn by Smythe
and sent to Walker, the United States consul at Queenstown,
contained only the name of the former as the proposed agent,
but that, before it was executed, Walker's name was inserted
" because of doubts entertained by Walker and his secretary
Piatt, as to the financial responsibility of Smythe."   He fur-
ther found that Walker had no knowledge that the payments
were being made to Smythe; that he, Walker, " supposed . . .
that Smythe would attend to such legal matters as required to
be attended to here, but that any money that might be collected
or realized would be sent to him for distribution amongst the
heirs " ; also that Walker never consented that Smythe should
receive the money without authority from him, and never gave
him any such authority and never gave to the administrator any
authority to pay or to transfer to Smythe the property.   The
principals never have ratified personally the payment to Smythe.
They never have ratified it by the act of their agents under the
· power, because only one of the joint agents has consented to it.
The lack of the consent of the other is fatal to the validity of the
act as an exercise of agency under the power.

It is urged by the accountant that under the circumstances of
this case the fair interpretation of the power is that Smythe who
resided here, where the money was, was to do all things here
necessary and proper to collect and receive it, and that he was
to send it to Walker in Ireland, where the principals resided,
for the simple purpose of distribution.   But we cannot so inter-
pret the power.   It was perfectly easy for the accountant to
keep the money until he received the consent of both agents,
or of the principals, as to what he should do with it.   All the
circumstances indicate that the principals never intended that
Smythe alone should receive the money without at least the con-
sent of Walker, so that the latter might be held accountable as

though both had received it. They looked to Walker for safety, and not alone or chiefly to Smythe. There is nothing in the circumstances of this case to control the general principle.

Nor does the case come within certain commercial exceptions where the general rule has yielded for the benefit of trade, or to meet the supposed necessities in contracts made by one of several joint owners of ships, and in cases of sales made by one of two factors of goods consigned to them for sale. See *Hawley* v. *Keeler*, 53 N. Y. 114. The case is also clearly distinguishable from cases like *Heard* v. *Lodge*, 20 Pick. 53, upon which the accountant relies. Nor is the fact that Smythe appeared as attorney for the principals to consent to the appointment of the accountant as administrator of importance.

*Exceptions overruled.*